UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTHONY DENSON, JR.,

      Plaintiff,

v.                     Case No:  2:21-cv-497-JES-NPM

MATTHEW KINNEY, ALAN
FLANAGAN, DAVID MERCADO,
JASON BOOTH, RYAN TUTT,
NATHAN KIRK, JOESPH
AMOROSI, and BARTOLOME
AMENGUAL,

      Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on defendants' Motion for Final Summary Judgment (Doc. #116). Plaintiff filed a Response in Opposition (Doc. #131) on May 10, 2023, to which defendants filed a Reply (Doc. #135) on May 24, 2023. Plaintiff also filed a Notice of Clarification (Doc. #136) on May 24, 2023, and Defendants filed a Supplement to Their Reply (Doc. #140) on June 5, 2023.

    Defendants seek summary judgment as to all remaining claims[1] asserted against them in the Third Amended Complaint (TAC).

_____

    [1] On September 21, 2022, the Court issued an Order dismissing Count Ten (only as to defendant Sheriff Kevin Rambosk), as well as Counts Eleven, Twelve, Thirteen, Fourteen, Seventeen and Eighteen of the Third Amended Complaint (TAC). (Doc. #77.) The Court

Plaintiff Anthony Denson, Jr. (Plaintiff or Denson) asserts eleven counts against Collier County Sheriff's Office (CCSO) deputies Matthew Kinney (Deputy Kinney), Alan Flanagan (Deputy Flanagan), David Mercado (Deputy Mercado), Jason Booth (Deputy Booth), Ryan Tutt (Deputy Tutt), Nathan Kirk (Deputy Kirk), Joseph Amorosi (Deputy Amorosi), and Bartolome Amengual (Deputy Amengual) (collectively Defendants) in their individual capacities based on events occurring during and after a July 5, 2017 traffic stop and arrest. (Doc. #72, pp. 30-59.) For the reasons set forth below, the motion is **granted in part and denied in part**.

### I.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477

---

subsequently issued an Order dismissing Counts Three, Four, Seven, Eight, and Sixteen of the TAC as to defendant Sheriff Kevin Rambosk. (Doc. #103.)

U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court draws "all reasonable inferences, and resolves all doubts in favor of the non-moving party—but only to the extent supportable by the record." Baxter v. Roberts, 54 F.4th 1241, 1253 (11th Cir. 2022) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. (citation omitted). In cases where a video recording contradicts the non-movant's version of the facts, the Court accepts the video's depiction and views the facts in the light depicted by the video if the recording "so utterly discredit[]" the party's story "that no reasonable jury could have believed" that party and there is no evidence that the recording has been "doctored or altered." Brooks v. Miller, 78 F.4th 1267, 1278 (11th Cir. 2023). See also Robinson v. Sauls, 46 F.4th 1332, 1340 (11th Cir. 2022).  If the videos "do not answer all questions or resolve all the details of the encounter, we view the evidence in the light most favorable to" plaintiff. Johnson v. City of Miami

Beach, 18 F.4th 1267, 1269 (11th Cir. 2021).  Similarly, "if the recording renders a party's story merely unlikely yet does not necessarily contradict it," the Court must accept the party's version for summary judgment purposes.  Brooks, 78 F.4th at 1278.

## II.

For summary judgment purposes, the material relevant facts (subsequently referred to as the "summary judgment facts") are as follows:[2]

On July 5, 2017, Denson was driving an Infiniti motor vehicle with the windows down. (Doc. #116-1, p. 3; Doc. #116-2, p. 113.) Denson came to a stop sign and stopped, at which time a CD in his car slid onto the floor.  Denson placed the upper portion of his seatbelt behind him and bent down in the vehicle to grab the CD. (Doc. #116-1, p. 3; Doc. #116-2, p. 114.)

Deputy Kinney was directly behind Denson and observed Denson without a seatbelt through the vehicle's open driver's-side window. (Doc. #116-3, p. 9.) Deputy Kinney activated his overhead emergency lights to conduct a traffic stop, and Denson stopped his vehicle at an intersection. (Id.)

---

[2] The summary judgment facts are either undisputed, or as depicted in the objective record evidence (i.e., the video recordings), or as viewed in the light most favorable to Plaintiff as the nonmoving party. As previously discussed, the Court credits objective record evidence over a party's account only when the two are squarely contradictory. Shaw v. City of Selma 884 F.3d 1093, 1098 (11th Cir. 2018); Baxter, 54 F.4th at 1253.

Deputy Kinney identified himself as he walked up to Denson's vehicle. (Id.)  Denson immediately said "why the fuck did you stop me?" (Id.) Deputy Kinney requested Denson's driver's license, vehicle registration, and insurance, and Denson again asked "why the fuck did you stop me?" (Id.)  Deputy Kinney told Denson that he would let him know the reason for the stop once Denson provided his license and other documents. (Id.) Denson informed Deputy Kinney that he did not have a physical driver's license[3] or proof of insurance. (Doc. #116-2, pp. 36-37, 125.) Deputy Kinney asked Denson whether his driver's license was suspended or whether he did not have the license. (Doc. #116-3, p. 9.) Denson yelled "No! My license is good, I don't have it." (Id.) Denson provided Deputy Kinney with his security guard identification and with child support papers that showed his license was not suspended.[4]

Deputy Kinney asked for Denson's vehicle registration, and Denson replied "well, if I give you my registration what's going

---

[3] At the time of the traffic stop, Denson did not know the whereabouts of his driver's license – "it was lost" – which is why he had his security guard ID with him.  (Doc. #116-1, p. 14.) Denson's wife, who was not in the vehicle at the time of the traffic stop, later found his driver's license under one of the seats of the vehicle. (Id.)

[4] On the day of Denson's arrest, a "Driver and Vehicle Information Database" (DAVID) check conducted through dispatch revealed that Denson's driver's license was suspended for failure to pay child support as of April 13, 2017. (Doc. #116-3, p. 11; Doc. #115, Ex. A.) The child support papers Denson possessed showed his driver's license had been reinstated.

on, why am I being pulled over?" (Doc. #116-1, p. 4.) Deputy Kinney made another request for Denson's license and registration. (Id.) Denson handed Deputy Kinney his vehicle registration. (Id.) Deputy Kinney directed Denson to look for proof of his insurance in the glove compartment box of his vehicle, but Denson refused to do so. Denson asserts that this was because he did not have the document, while Deputy Kinney asserts Denson stated he was afraid Deputy Kinney would shoot him. (Doc. #116-2, pp. 127-28; Doc. #116-3, p. 9.) Deputy Kinney reassured Denson that he was not going to shoot him, and told Denson he was "being ridiculous." (Doc. #116-3, p. 9.) Denson again refused to look for his insurance documents, stating "no, I'm not being ridiculous. It's reasonable. You guys are out there shooting people." (Doc. #116-2, p. 132.) Deputy Kinney asked Denson for his name and date of birth. (Doc. #116-3, p. 9.) Denson stated that his first name was "Anthony." Deputy Kinney asked for Denson's middle name, but Denson advised he did not have one. (Id.) Deputy Kinney asked for Denson's last name and date of birth, but Denson did not provide an answer. (Id.)

The accounts of what happened next vary somewhat, depending on who is recounting the events. Deputy Kinney recalls that he advised Denson he was under arrest for obstruction and ordered Denson to get out of the vehicle. Denson refused, staying seated in his vehicle with his hands on the steering wheel. (Id., p. 135;

6

Doc. #116-3, pp. 10, 27.) Deputy Kinney again directed Denson to exit the vehicle several times, but Denson refused. (Id.)

Denson admits that he stayed seated in the vehicle with his hands on the steering wheel, but maintains that he did not refuse to get out of the vehicle. (Doc. #116-2, p. 135.) Rather, Denson recalls that Deputy Kinney ordered him to "get the fuck out of the car" and then Deputy Kinney began "fumbling" on the inside of Denson's vehicle door to unlock the door. (Id.) When Deputy Kinney reached inside the vehicle to unlock the door, Denson's face was "right there", and Deputy Kinney struck Denson's face. (Id., p. 45.)

According to Denson, Deputy Kinney opened the vehicle's door, grabbed Denson's left hand, and secured it with the handcuff. (Doc. #116-3, p. 10.) As Deputy Kinney tried to "yank" Denson out of the vehicle, Kinney's right side slammed into the side of the vehicle. Denson began laughing, looked at Kinney and said "I still got my seatbelt on dumbass, why [sic] you can't pull me out of the car." (Doc. #116-1, pp. 4-5; Doc. #116-2, pp. 135-36.) Deputy Kinney went over the top of Denson's body, unlocked the seatbelt, got back up, and then attempted to remove Denson from the vehicle. (Doc. #116-1, p. 5.)

Before Deputy Kinney removed Denson from the vehicle, he observed Denson shaking, grinding his teeth, and growling; Denson pulled his right arm back. (Doc. #116-3, pp. 10, 27.) It appeared

to Deputy Kinney that Denson was going to strike him in the face. (Id.) Denson disputes these facts.  In any event, it is undisputed that Deputy Kinney pulled his agency-issued Taser out of its holster with his left hand while holding Denson's left wrist with his right hand. (Id.) Denson lowered his right arm and complied. (Id.)

As Deputy Kinney was "escorting" Denson out of the vehicle, Denson put his hand to the ground to keep from falling. (Doc. #116-1, p. 5.) Deputy Kinney took Denson's wrist and "tried to flip it over", but Denson reached up, saying "you're about to break my shoulder, it doesn't go that way, I have a stint in my shoulder." (Id.) Deputy Kinney grabbed Denson by the throat, squeezing his larynx as hard as he could, and pushed Denson back on the hood of Deputy Kinney's patrol car. (Id.) Deputy Kinney told Denson that he was "resisting arrest and to stop resisting." (Id.) While Denson was on the hood of the car only his left wrist was handcuffed; Denson was not handcuffed behind his back. (Doc. #116-2, pp. 140-41.) Deputy Kinney held Denson on the hood of the patrol car (with his back on the car) until back-up police units arrived, applying pressure to Denson's handcuffed wrist as well as his jaw. (Id.; Doc. #116-3, pp. 10, 27; Doc. #115, Ex. B.) Deputy Kinney did not punch Denson with a closed fist (as alleged in the TAC, Doc. #72, ¶ 36), but Denson asserts that Deputy Kinney did strike him in the

face.  Due to the heat, Denson kept trying to lift his head off the hood of the patrol vehicle. (Doc. #116-2, p. 144.)

Deputies Amengual, Flanagan, and Tutt were riding together when they heard an altercation over the radio, which sounded like Deputy Kinney was in some type of distress.  (Doc. #116-4, p. 3.) The deputies responded, and upon arrival Deputy Amengual observed Deputy Kinney and Denson leaning across the hood of Deputy Kinney's patrol vehicle; Denson had one handcuff on, and Deputy Kinney was holding Denson in place, with Denson's back on the hood of the vehicle and both hands free. (Doc. #116-2, pp. 55-56; Doc. #116-4, p. 4.) Deputy Amengual attempted to grab one of Denson's arms, but instead Deputy Tutt did so and put it behind Denson's back (Doc. #116-5, p. 4), while Deputy Flanagan grabbed Denson's other arm and put it behind Denson's back and handcuffed Denson. (Doc. #116-10, p. 3.) According to Denson, during the handcuffing process he felt "blows" to his body like he was being hit multiple times.

The deputies assert that after Denson was handcuffed none of the officers punched, kicked, or hit him. (Doc. #116-2, pp. 60-61; 145-46, 60-61; Doc. #116-4, p. 4; Doc. #116-5, p. 4.) Denson maintains he was hit multiple times.  Denson's face was not injured except for a bruised chin; his body was sore from being slammed on the hood of the car and his shoulder and ankle pain (from previous

injuries) was aggravated.[5] (Doc. #116-2, p. 68.) Denson was yelling and was agitated. (Doc. #116-4, p. 4; Doc. #116-5, p. 4; Doc. #116-10, p. 3.)

Deputies Kirk and Mercado, the last deputies to arrive at the scene of the traffic stop, arrived after Denson was handcuffed and were not involved in the arrest. (Doc. #116-2, p. 110; Doc. #116-6, pp. 2-3; Doc. #116-8, pp. 3-4.) Deputies Kirk and Mercado escorted Denson to the police vehicle after he had been handcuffed. Deputy Mercado held onto Denson while Denson's person was searched. (Doc. #116-6, p. 3.)

Deputies Kirk, Booth, and Flanagan conducted an inventory search of Denson's vehicle in preparation for it to be towed away from the area; however, the vehicle was later released to Denson's wife and was not towed.  (Doc. #116-7, p. 3: Doc. #116-8, pp. 4-5; Doc. #116-10, pp. 3-4.) The search of Denson's person and vehicle did not reveal any illegal drugs, contraband, or weapons. (Doc. #116-7, p. 2.)

Denson was agitated and upset as Deputies Kirk and Mercado transported Denson to the jail. (Doc. #116-6, p. 4; Doc. #116-7, p. 5.)  During the trip Denson stated he was a "Black Lives Matter" supporter and further stated "[w]hen I get out of here, I am going

---

[5] The record does not reflect that Denson has received medical care for any alleged injuries resulting from his July 5, 2017, arrest. (Doc. #116-2, p. 68.)

to get this cracker," "Is on, is on, is on nigga, is on, bitch"; "Your boy in trouble, this shit is personal, you all don' t know me"; "Don't let me out for a couple of days, because when I get out, I am going to find your friend." (Doc. #115, Exhibit C; Doc. #116-3, p. 18; Doc. #116-6, p. 4; Doc. #116-7, p. 5.) Concerned about Deputy Kinney's safety, Deputy Mercado informed Deputy Kinney about Denson's statements. (Doc. #116-6, p. 5.)

Denson was charged with battery on a law enforcement officer, resisting or obstructing an officer without violence, and driving while license suspended or revoked, as well as a nonmoving traffic violation for failure to wear a seatbelt. (Doc. #72, ¶¶ 2, 74-75; Doc. #116-3, p. 23.) Denson later received Notices of Nolle Prosequi for the charges brought against him. (Doc. #72, ¶¶ 3, 74-75; Doc. #131-11.) Additional facts will be set forth below as necessary to resolve specific issues.

Plaintiff's Third Amended Complaint (TAC) (Doc. #72) is the operative pleading. There are eleven remaining causes of action against defendants Kinney, Flanagan, Mercado, Booth, Tutt, Kirk, Amorosi, and/or Amengual in their individual capacities: (1) First Amendment Retaliation pursuant to 42 U.S.C. § 1983 (Count I); (2) illegal search and seizure pursuant to 42 U.S.C. § 1983 (Count II); (3) false arrest under Florida law (Count III); (4) false imprisonment under Florida law (Count IV); (5) false arrest pursuant to 42 U.S.C. § 1983 (Count V); (6) false imprisonment

pursuant to 42 U.S.C. § 1983 (Count VI); (7) assault under Florida law (Count VII); (8) battery under Florida law (Count VIII); (9) excessive force pursuant to 42 U.S.C. § 1983 (Count IX); (10) malicious prosecution under Florida law (Count X); and (11) failure to intervene pursuant to 42 U.S.C. § 1983 (Count XV). All defendants move for summary judgment on all counts, arguing there are no genuine issues of material fact and they are entitled to judgment in their favor as a matter of law. (Doc. #116, p. 2.)

### III.

Prior to the addressing the merits of Defendants' motion for summary judgment, the Court must first address Defendants' argument that Plaintiff has abandoned all his claims against all the CCSO deputies except for Deputy Kinney, and additionally has abandoned his failure to intervene claim (Count XV) against Deputy Kinney. (Doc. #135, pp. 1-2.) Defendants argue that they all moved for summary judgment, but Plaintiff failed to respond to the arguments of deputies other than Deputy Kinney and failed to address Deputy Kinney's arguments relating to the failure to intervene claim.

The law is clear that Denson may not rely simply on his non-verified pleadings to avoid summary judgment. See Edmondson v. Bd. of Trs. of Univ. of Ala., 258 F. App'x 250, 253 (11th Cir. 2007) ("In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. There is no burden

upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").[6] "[A] non-movant's silence on an issue after a movant raises the issue in a summary judgment motion is construed as an abandonment of the claim." Mosley v. Ala. Unified Judicial Sys., 562 F. App'x 862, 866 (11th Cir. 2014)(citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). See also Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) ("[I]n their brief in opposition to BOA's motion for summary judgment, Plaintiffs have failed to respond to BOA's arguments that it is entitled to summary judgment on their claims. '[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.' Also, '[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.' Consequently, Plaintiffs have abandoned their claims." (citations omitted)).

Plaintiff's Response in Opposition to Defendants Motion for Summary Judgment (Doc. #131) and Notice of Clarification (Doc.

---

[6] An exception to this rule is that allegations in a verified complaint is treated as plaintiff's testimony. Brooks, 78 F.4th at 1272. The Third Amended Complaint (Doc. #72) is not verified.

#136) address facts relating to all the CCSO deputies.  However, with the exception of the unlawful search and seizure claim in Count II (Doc. #131, pp. 25-27), plaintiff's responses do not discuss the liability of deputies other than Deputy Kinney. Additionally, the responses fail to discuss at all whether summary judgment should be granted as to Defendants on Count XV of the TAC for failure to intervene. (See Doc. #131; Doc. #136.)

The Court finds that, except for Count II, plaintiff's failures result in the portion of each claim against deputies Flanagan, Mercado, Booth, Tutt, Kirk, Amorosi, and Amengual being abandoned.   Additionally, Count XV is abandoned as to all Defendants, including Kinney.  Accordingly, summary judgment as to Counts I, III, IV, V, VI, VII, VIII, IX, and X is granted as to deputies  Flanagan,  Mercado,  Booth,  Tutt,  Kirk,  Amorosi,  and Amengual.  Summary judgment is entered as to Count XV as to all defendants.

## IV.

### A. 42 U.S.C. § 1983 Principles

Counts I, II, V, VI, and IX of the TAC assert various claims pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action against any person who, under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.  "To state a claim for relief in an action brought under §

1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003)(citation omitted). "A constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed." DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019)).  Plaintiff identifies the First Amendment, Fourth Amendment, and Fourteenth Amendment as the constitutional rights at issue in the case.

   **B. Qualified Immunity Principles**

   Since Deputy Kinney asserts entitlement to qualified immunity as alternative relief for the individual capacity claims, the Court addresses those governing principles.  Officers who act within their discretionary authority are "entitled to qualified immunity under [section] 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." Dist. of Columbia v. Wesby, 583 U.S. 48, 62 (2018) (internal punctuation and citations omitted).  As the Eleventh Circuit has recently summarized:

>        Qualified immunity shields public officials
>        from liability for civil damages when their
>        conduct does not violate a constitutional

> right that was clearly established at the time
> of the challenged action. To receive qualified
> immunity, the defendant must first show he was
> performing a discretionary function. The
> plaintiff then bears the burden of proving
> both that the defendant violated his
> constitutional right and that the right was
> clearly established at the time of the
> violation.

Washington v. Howard, 25 F.4th 891, 897-98 (11th Cir. 2022)(internal punctuation and citations omitted.) See also Garcia v. Casey, 75 F.4th 1176, 1185 (11th Cir. 2023); Brooks, 78 F.4th at 1279-80.

Plaintiff asserts that Deputy Kinney acted within the course and scope of his employment, and under color of law, as a certified law enforcement officer. (Doc. #72, ¶¶ 2, 94.)  It is clear from the undisputed facts that Deputy Kinney was acting within his discretionary authority during his interaction with Plaintiff on July 5, 2017.  Therefore, Plaintiff will bear the burden of showing that: (1) the summary judgment facts establish the officer's conduct violated a federal right, and (2) the federal right in question was clearly established at the time of the violation. Tolan v. Cotton, 572 U.S. 650, 655-57 (2014).

As to a clearly established right,

> [a] right is clearly established only if its
> contours are sufficiently clear that a
> reasonable official would understand that what
> he is doing violates that right. In other
> words, existing precedent must have placed the
> statutory or constitutional question beyond
> debate. This doctrine gives government

16

> officials breathing room to make reasonable
> but mistaken judgments, and protects all but
> the plainly incompetent or those who knowingly
> violate the law.

Carroll v. Carman, 574 U.S. 13, 16 (2014) (per curiam) (internal citations and punctuation omitted). A plaintiff can prove that a particular constitutional right is clearly established in one of three ways: (1) showing that a materially similar case has already been decided by an appropriate court; (2) showing that a broader, clearly established principle should control the novel facts of a particular case; or (3) establishing that the conduct so obviously violates the Constitution that prior case law is unnecessary. Davis v. Waller, 44 F.4th 1305, 1312–13 (11th Cir. 2022). Entitlement to qualified immunity is for the court to decide as a matter of law.  Baxter, 54 F. 4th at 1256.

**V.**

Defendants move for summary judgment on Plaintiff's federal claims for false arrest, false imprisonment, illegal search and seizure, first amendment retaliation, and excessive force, all brought pursuant to § 1983. The Court first addresses the threshold issues of whether Deputy Kinney lawfully stopped and detained Plaintiff during the July 5, 2017, traffic stop.

**A. Initial Stop of Vehicle**

Defendants argue that Deputy Kinney had probable cause to conduct a traffic stop because Deputy Kinney observed Denson

driving his vehicle without a seatbelt. (Doc. #116, pp. 16-20.) Plaintiff's position is that the traffic stop was unlawful because Deputy Kinney did not have reasonable suspicion or probable cause to believe he committed a seatbelt traffic violation since Deputy Kinney failed to observe Plaintiff not wearing his seatbelt while the vehicle was "*in motion*." (Doc. #131, pp. 20-21.)  Denson argues that at the least there is a dispute as to material facts as to whether Deputy Kinney observed him committing a traffic violation, which defeats the summary judgment motion.  (Id.)

**(1)  General Principles for Traffic Stops**

A traffic stop of a motor vehicle is a "seizure" within the meaning of the Fourth Amendment, Rodriguez v. United States, 575 U.S. 348, 360 (2015), and the driver is "seized" within the meaning of the Fourth Amendment. Brendlin v. California, 551 U.S. 249, 251 (2007). A traffic stop "is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Whren v. United States, 517 U.S. 806, 810 (1996).

Under the Fourth Amendment, the reasonableness of a traffic stop is determined by the presence of at least reasonable suspicion that a traffic violation has occurred. Id. at 810. See also United States v. Campbell, 26 F.4th 860, 880 & n.15 (11th Cir. 2022) (en banc) (noting that "reasonable suspicion is all that is required" for a traffic stop.) A traffic stop is therefore constitutional "if the officer had reasonable suspicion to believe that criminal

activity has occurred, is occurring, or is about to occur."
Baxter, 54 F.4th at 1256 (citing Campbell, 26 F.4th at 880).  "In
other words, an officer making a stop must have a particularized
and objective basis for suspecting the person stopped of criminal
activity." Id. (quotation omitted). "Even minor traffic violations
qualify as criminal activity," Baxter, 54. F.4th at 1256 (citation
omitted), including operating a motor vehicle while not wearing a
seat belt. See United States v. Sanchez, 839 F. App'x 388, 390
(11th Cir. 2020); State v. Pickersgill, 284 So.3d 542, 550-51 (Fla.
4th DCA 2019.)

**(2)  Legal Cause for Stop and Detention – Seatbelt Violation**

While a seatbelt violation can support a stop of a vehicle
and the detention of its driver, the parties disagree as to whether
Deputy Kinney observed such a violation.  The parties agree that
when Plaintiff's vehicle came to the stop sign the vehicle stopped
and Plaintiff removed the upper portion of his seatbelt and placed
it behind him. (Doc. #116, ¶ 2; Doc. #131, p. 9, ¶ 4.) The parties
further agree that Plaintiff was "seized" for Fourth Amendment
purposes when Deputy Kinney conducted the traffic stop. (Doc. #116,
p. 20; Doc. #131, p. 20.) The parties disagree whether the facts
support legal cause to conduct the traffic stop and detain
Plaintiff.

Under Florida law, operating a motor vehicle without an
"appropriately adjusted safety belt which is properly fastened at

all times when a motor vehicle is *in motion*" is a traffic violation. §§ 316.614(3)(c), (4)(b), Fla. Stat. (emphasis added). The National Traffic Safety Administration states that a "shoulder harness should be worn across the shoulder and chest with minimal, if any slack . . . and should **not** be worn under the arm or behind the back." https://www.nhtsa.gov/sites/nhtsa.gov/files/seatbelt use.pdf (last visited on September 23, 2023). "Motor vehicle" means "a motor vehicle as defined in s. 316.003 which is operated on the roadways, streets, and highways of this state or *when stationary at a traffic control device*." § 316.614(3)(a), Fla. Stat. (emphasis added). Thus, the driver of a motor vehicle which is stationary at a traffic control device, i.e., a stop sign, must comply with Florida's seatbelt statute.

The summary judgment facts demonstrate that after Denson came to a stop at the stop sign, he placed the upper portion of his seatbelt behind his back in order to retrieve a CD off the floor of his vehicle. Denson's vehicle was therefore "*in motion*" even though stationary (but not parked) while at a traffic control device, and the driver was subject to Florida's seatbelt requirement. Deputy Kinney observed Denson through the vehicle's open window and saw that Denson did not have a seatbelt across his chest while stopped at a traffic control device. Deputy Kinney thus had a particularized and objective basis for probable cause (and therefore more than reasonable suspicion) to believe Denson

20

was committing a traffic infraction by not wearing a properly adjusted seatbelt, in violation of the Florida seatbelt statute. See United States v. Joseph, 611 F. App'x 946, 947-48 (11th Cir. 2015)(citing Fla. Stat. § 316.614 and affirming the finding that a traffic stop was constitutional where the police officer observed defendant not wearing a seat belt while operating a motor vehicle); United States v. Hawkins, 934 F.3d 1251, 1259 (11th Cir. 2019) ("Law enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles."); United States v. Sampson, 99 F. Supp. 3d 1352, 2015 U.S. Dist. LEXIS 38510 (M.D. Fla. 2015)(Officers had probable cause to make a traffic stop where defendant committed civil traffic infractions by not wearing a seatbelt and making an improper lane change); Hatcher v. State, 834 So. 2d 314, 319-320 (Fla. 5th DCA 2003) (holding that a traffic stop for a violation of Florida's Safety Belt Law was valid).  The Court finds that the traffic stop of Denson was lawful and not a violation of the Fourth Amendment.

    **(3)  Scope and Duration of Traffic Stop**

While the traffic stop of Denson was lawful, the scope and duration of the resulting detention must also be reasonable to comply with the Fourth Amendment. "Even if the police have reasonable suspicion to make a traffic stop, they do not have

unfettered authority to detain a person indefinitely. The detention is 'limited in scope and duration.'" United States v. Campbell, 912 F.3d 1340, 1350 (11th Cir. 2019)(citation omitted.) "[T]he duration of a traffic stop must be limited to the time necessary to effectuate the purpose of the stop." United States v. Burwell, 763 F. App'x 840, 850 (11th Cir. 2019). "The purpose of a traffic stop includes determining whether to issue a traffic citation, checking the driver's license, searching for outstanding warrants against the driver, and inspecting the vehicle's registration and proof of insurance." See Rodriguez v. United States, 575 U.S. 348, 355 (2015). See also United States v. Braddy, 11 F.4th 1298, 1310 (11th Cir. 2021).

Plaintiff argues that there is a dispute of material fact as to whether Deputy Kinney's investigation - requesting his driver's license, registration, and proof of insurance – was proper.  This is so, Plaintiff argues, because Plaintiff disputes whether Deputy Kinney observed Denson committing an actual traffic violation. (Doc. #131, p. 22.)  As discussed above, the summary judgment facts establish that Deputy Kinney observed Denson committing a traffic violation, justifying the traffic stop.  Thus, Deputy Kinney's requests for Denson's driver's license, registration, and proof of insurance fall well within the lawful purpose and scope of a traffic stop. Rodriguez, 575 U.S. at 355.

Nonetheless, the duration of the traffic stop may not "exceed[] the time needed to handle the matter for which the stop was made." Rodriguez, 575 U.S. at 350. See also Braddy, 11 F.4th at 1310 (the court looks to "whether the police diligently pursued the investigation."). Deputy Kinney was entitled to the time "reasonably required" to address Denson's traffic violation and attend to "related safety concerns" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Rodriguez, 575 U.S. at 354-55.

The summary judgment facts establish that Deputy Kinney did not prolong the stop beyond the length of time that was required to complete such core tasks. During the traffic stop Deputy Kinney was attempting to obtain Denson's name, his driver's license (or the status thereof), vehicle registration, and proof of insurance. As noted, these inquiries are all within the proper scope of the traffic stop. See Rodriguez, 575 U.S. at 355. Prior to Denson's arrest, the stop was only prolonged by Denson's questions as to why he was pulled over, his refusal to look in the vehicle's glove compartment for proof of insurance, and his refusal to provide his last name and date of birth. Because Deputy Kinney did not take actions unrelated to the traffic stop, the duration of the detention was not unreasonable. See Burwell, 763 F. App'x at 850.

The Court finds that the traffic stop and its duration did not violate the Fourth Amendment.  The Court next examines whether the subsequent arrest nonetheless violated federal constitutional principles.

### B. Count V and Count VI – Fourth Amendment False Arrest and False Imprisonment Against Deputy Kinney In His Individual Capacity Pursuant to 42 U.S.C. § 1983

Count V and Count VI of the TAC assert federal claims pursuant to 42 U.S.C. § 1983 against Deputy Kinney for false arrest (Count V) and false imprisonment (Count VI).  (Doc. #72, ¶¶ 136-40, 142-46.)  Both claims assert that Deputy Kinney violated Plaintiff's Fourth Amendment rights by "intentionally, wrongfully and illegally grabbing, seizing, handcuffing, arresting, detaining and imprisoning Plaintiff." (Id., ¶ 142.)  Both claims further assert that Deputy Kinney deliberately restrained Plaintiff without legal authority by "twisting his arms behind his back, rear handcuffing him and confining him to a jail cell" without a warrant, Plaintiff's consent, or probable cause. (Id., ¶¶ 143-44.)

Defendants respond that these federal false arrest and false imprisonment claims both fail because Deputy Kinney had probable cause to arrest Denson. (Doc. #116, pp. 14-21.)  Alternatively, Defendants argue that Deputy Kinney is entitled to qualified immunity because he had arguable probable cause to arrest and the federal right at issue was not clearly established. (Id., p. 22.)

**(1)  False Arrest and False Imprisonment Principles**

False arrest and false imprisonment are overlapping torts which both concern detention without legal process. Wallace v. Kato, 549 U.S. 384, 388-89 (2007); Williams v. Aguirre, 965 F.3d 1147, 1157 (11th Cir. 2020). Both the arrest and the detention of a person (even beyond the start of legal process) constitute a "seizure" under the Fourth Amendment. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (arrest); Manuel v. City of Joliet, 580 U.S. 357 (2017) (detention beyond start of legal process). Under the Fourth Amendment, the reasonableness of such a seizure is determined by the presence or absence of probable cause. Baxter, 54 F.4th at 1265 (citing Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007)). "[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude ... that there was a substantial chance of criminal activity.'" Washington, 25 F.4th at 902 (quoting Wesby, 138 S. Ct. at 586). See also Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022); Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022).

"To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." Richmond, 47 F.4th at 1180. "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." Baxter, 54 F.4th at 1265 (citation omitted.)  On the

other hand, the existence of probable cause constitutes an absolute bar to a section 1983 action for false arrest, even if a minor offense is involved. <u>Baxter</u>, 54 F.4th at 1265. <u>See also</u> <u>Brooks</u>, 78 F.4th at 1281.

"A false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment." <u>Helm v. Rainbow City, Ala.</u>, 989 F.3d 1265, 1278 (11th Cir. 2021) (citing <u>Campbell v. Johnson</u>, 586 F.3d 835, 840 (11th Cir. 2009)). "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." <u>Campbell</u>, 586 F.3d at 840. "[I]n order to establish a due process violation, a plaintiff must show that the officer acted with deliberate indifference, i.e., demonstrating that the officer 'had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence.'" <u>Helm</u>, 989 F.3d at 1278 (citations omitted.) "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." <u>Ortega v. Christian</u>, 85 F.3d 1521, 1526 (11th Cir. 1996). A claim of false imprisonment under § 1983, however, is defeated if the officer has probable cause to arrest. <u>Case v. Eslinger</u>, 555 F.3d 1317, 1330 (11th Cir. 2009).

**(2)  Existence of Probable Cause**

The parties do not dispute that Denson was detained during the traffic stop and eventually arrested and taken to jail. (Doc. #116, pp. 20-22; Doc. #131, pp. 14-15.) The parties disagree, however, as to whether there was probable cause or arguable probable cause for the arrest.

As stated earlier, Plaintiff bears the burden of establishing the lack of probable cause. Richmond, 47 F.4th at 1180. Probable cause to arrest exists when a "reasonable officer could conclude . . . that there was a substantial chance of criminal activity." Washington, 25 F.4th at 902. This "is not a high bar," Paez, 915 F.3d at 1286 (citation omitted), and "requires only a probability . . . of criminal activity, not an actual showing of such activity." Case, 555 F.3d at 1327 (citation omitted).

Deputy Kinney stated he was arresting Denson for obstructing without violence in violation of Fla. Stat. § 843.02. Denson asserts there is a genuine dispute of material fact as to whether Deputy Kinney had probable cause to arrest him for this offense. Specifically, Denson argues that he did not resist Deputy Kinney by refusing to exit his vehicle, and thus, did not obstruct Kinney's lawful execution of a legal duty. (Doc. #131, p. 23.) Denson further argues that Deputy Kinney's real reason for arresting him had nothing to do with failing to exit the vehicle. (Id.) Rather, Denson maintains that Deputy Kinney testified he

arrested him for failing to produce his driver's license and/or legal full name, which Deputy Kinney admitted was not a sufficient reason for an arrest. (Id. pp. 23-24.) Denson asserts that he provided his security guard identification that contained his full name and date of birth. (Id., p. 24.)

To support a conviction for obstructing without violence, "the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." C.E.L. v. State, 24 So. 3d 1181, 1185-86 (Fla. 2009). It is also a crime under this statute to attempt to oppose or obstruct an officer. Post v. City of Fort Lauderdale, 7 F.3d 1552, 1558-59 (11th Cir. 1993), modified 14 F.3d 583 (11th Cir. 1994); Storch v. City of Coral Springs, 354 F.3d 1307, 1315 (11th Cir. 2003).

In the summary judgment context, the Court's "focus is whether a reasonable jury could find that evidence of either element was lacking at the scene of the incident." Baxter, 54 F.4th at 1266. If so, Deputy Kinney did not have probable cause to arrest Denson. Id. The Court discusses the two elements in turn.

### (a) Engaged In Lawful Execution Of A Legal Duty

A person violates the Florida statute only if his resistance or obstruction is in response to the officer's "lawful execution of a legal duty." Fla. Stat. § 843.02. This requires more than an

officer who is "merely on the job." Storch, 354 F.3d at 1315. The Court looks to the legal standard that governs the officer's action and determines whether the officer complied with that legal duty at the time of the resisting/obstructing conduct. C.E.L., 24 So. 3d at 1186.

> To meet this threshold, the conduct of the officer must be consistent with the Fourth Amendment and any other relevant requirements of law. This inquiry focuses on the specific point in time when the resistance occurred so that the essential inquiry is whether the officer was lawfully executing a legal duty when the obstructing conduct occurred. Ultimately, if an arrest is not lawful, then a defendant cannot be guilty of resisting it.

Baxter, 54 F.4th at 1267.

As discussed above, Deputy Kinney was engaged in the lawful execution of a legal duty when the allegedly obstructing conduct occurred. Deputy Kinney lawfully conducted a traffic stop when he observed Denson was not properly wearing a seatbelt after Denson's vehicle came to a stop at a stop sign. Deputy Kinney lawfully stopped and detained Denson for a traffic violation, properly requested production of a driver's license, registration, and insurance, and lawfully requested that Denson exit the vehicle. Accordingly, Deputy Kinney was engaged in the lawful execution of a legal duty during the traffic stop.

**(b)   Obstruction Or Resistance Of That Lawful Duty**

The second element is satisfied when "the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of [the officer's] legal duty." C.E.L., 24 So. 3d at 1185–86.   Deputy Kinney announced that he was arresting Denson for "obstruction" based upon Denson not providing his driver's license and full name, as Denson suggests. (Doc. #131, pp. 23-24.)

As a threshold matter, the legal analysis of this element is not limited to the offense announced by the arresting officer. "The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Crocker v. Beatty, 995 F.3d 1232, 1244 (11th Cir. 2021) (quoting Whren, 517 U.S. at 806). "When an officer makes an arrest which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir. 2002). "As long as probable cause existed to arrest the suspect for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges." See Reid v. Henry Cnty., 568 F. App'x 745, 749 (11th Cir. 2014). Denson acknowledges that the arrest is valid if Deputy Kinney could have arrested him for any offense, even if probable cause was

lacking for the charge identified at the time of the arrest.  (Doc. #131, p. 19.)

Denson argues that he never resisted Deputy Kinney by refusing to get out of the vehicle. (Doc. #131, p. 23.)  There is indeed a genuine dispute of material fact as to whether Denson refused to exit the vehicle as directed by Deputy Kinney.  This would preclude summary judgment if this were the only basis for obstruction.  But Deputy Kinney was objectively justified in arresting Denson for obstruction for his refusal to comply with Deputy Kinney's request to provide his full name and date of birth, for a seatbelt violation, and for driving without a driver's license.

Even minor offenses, such as misdemeanors or traffic violations, may be the basis for a full custodial arrest.  <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001) (holding that the arrest of a motorist for the fine-only offenses of failing to wear a seat belt and failing to fasten the children's seat belts did not violate the Fourth Amendment). It follows that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." <u>Atwater</u>, 532 U.S. at 354.

As discussed above, Deputy Kinney was engaged in executing a lawful traffic stop, which permitted him to ask for Denson's driver license, proof of insurance, and vehicle registration. By

repeatedly refusing to comply with Deputy Kinney's reasonable instructions, Denson willfully interfered with Kinney's lawful activities in violation of § 843.02. See, e.g., Funderburk v. Snyder, No. 2:21-cv-14290-Can, 2023 WL 3879158, 2023 U.S. Dist. LEXIS 51718, at *12-13 (S.D. Fla. Mar. 27, 2023)(finding there was probable cause to arrest under Section 843.02 for failure or refusal to identify oneself when lawfully detained); Alli v. Green, No. 5:20-cv-556, 2022 U.S. Dist. LEXIS 148349, 2022 WL 3544317, at *10-11 (M.D. Fla. Aug. 18, 2022) (finding arguable probable cause to support § 843.02 arrest where suspect refused to identify himself during a Terry stop); Kinney v. Montgomery, No. 15-60767-Civ-DIMITROULEAS, 2018 U.S. Dist. LEXIS 10672, at *35-36 (S.D. Fla. Jan. 22, 2018)(finding probable cause to arrest under Section 843.02 where the officer asked for plaintiff's identification and plaintiff refused to comply).

Florida law mandates that when operating a motor vehicle on streets or when stationary at a traffic control device, the driver must have an "appropriately adjusted safety belt which is properly fastened at all times when a motor vehicle is *in motion*." See §§ 316.614(3)(a), (c), (4)(b), Fla. Stat. (emphasis added). A seatbelt violation forms the basis for a lawful arrest and detention. Cruz v. Davidson, 552 Fed. Appx. 865, 868 (11th Cir. 2013), citing Atwater v. City of Lago Vista, 532 U.S. at 323-24 ("The Supreme Court also has held that a custodial arrest does not

violate the Fourth Amendment even if the crime for which the person is arrested is not an arrestable offense under state law. Virginia v. Moore, 553 U.S. 164, 176 (2008). "Therefore, to the extent Cruz argues that her detention cannot be justified objectively because it was a minor offense or because her detention was not authorized under Georgia law, her argument fails. There was probable cause to believe that Cruz committed a crime, namely a violation of the seatbelt law, and that alone is sufficient to justify her detention for the purposes of the Fourth Amendment."). See also Clemons v. Knight, No. 8:14-cv-1376-T-27MAP, 2015 WL 7430032, 2015 U.S. Dist. LEXIS 157239, at *17 n.9 (M.D. Fla. Nov. 19, 2015)(noting that under § 316.614, it is unlawful to operate a motor vehicle without wearing a seat belt); United States v. Joyner, No. 2:15-cr-29-FtM-29MRM, 2015 U.S. Dist. LEXIS 161911, at *4 (M.D. Fla. Dec. 2, 2015)("Driving a motor vehicle without wearing a seatbelt is a traffic violation under Florida law. Fla. Stat. § 316.614(4)(b) and (8).").

Florida law also provides that "[a] law enforcement officer may arrest a person without a warrant when . . . [a] violation of chapter 316 has been committed in the presence of the officer." Fla. Stat. § 901.15(5). See, e.g., United States v. Clark, 32 F.4th 1080, 1089 (11th Cir. 2022)(holding that violation of traffic laws can serve as the basis for custodial arrests); Ybarra v. City of Miami, 127 F. App'x 470 (11th Cir. 2005) (under Fla. Stat. §

901.15(5) affirming arrest of plaintiff for a non-criminal traffic infraction attempting to collect money in the middle of a street in violation of Fla. Stat. § 316.130(3)); Durruthy v. Pastor, 351 F.3d 1080 (11th Cir. 2003) (pursuant to § 901.15(5) probable cause existed to arrest the plaintiff for unjustifiably walking in a roadway paved for vehicular traffic (a non-criminal traffic infraction) in violation of Fla. Stat. § 316.130(3)); Rodi v. Rambosk, No. 2:13-cv-556-FtM-29CM, 2014 WL 1876218, 2014 U.S. Dist. LEXIS 64355, at *11-12 (M.D. Fla. May 9, 2014)(under § 901.15(5) there was probable cause to arrest plaintiff for running a stop sign in violation of Fla. Stat. § 316.123(2)(a), a non-criminal traffic infraction); Jeanty v. City of Miami, 876 F. Supp. 2d 1334, 1344 (S.D. Fla. 2012)(probable cause existed under § 901.15(5) to arrest plaintiff for parking in a crosswalk in violation of Fla. Stat. § 316.1945(1)(a)(4)); State v. Potter, 438 So. 2d 1085, 1087 (Fla. 2d DCA 1983) (police officer was acting within the authority conferred by § 901.15(5) when making a warrantless arrest for violation of Fla. Stat. § 316.089, a civil infraction involving failure to maintain a single lane).

Here, the summary judgment facts show that Denson violated Florida's seatbelt law, Fla. Stat. §§ 316.614(3)(a), (c), and (4)(b), in Deputy Kinney's presence. Thus, for Fourth Amendment purposes, Deputy Kinney had probable cause to arrest Denson for failing to properly wear his seatbelt.

Additionally, the summary judgment facts establish that Deputy Kinney had probable cause to arrest Denson for driving without a driver's license.  It is undisputed that Denson was seen by Deputy Kinney driving the motor vehicle, and that Denson told Deputy Kinney he had lost his driver's license and did not have it with him.  Section 322.03(1), Fla. Stat., makes it a misdemeanor for any person to operate a car without a driver's license.  Deputy Kinney clearly had probable cause to believe Denson was driving without a license, justifying an arrest, Brooks, 78 F.4th at 1281-82, even though Denson's wife later found the driver's license under a seat in the vehicle.

Accordingly, Deputy Kinney is entitled to summary judgment on the claim of false arrest pursuant § 1983.

Plaintiff's false imprisonment claim also fails if Deputy Kinney had probable cause to arrest. Case, 555 F.3d at 1330; Quire v. Miramar Police Dep't, 595 F. App'x 883, 886 (11th Cir. 2014). As stated above, the Court finds that Deputy Kinney had such probable cause to arrest and detain Denson.  The summary judgment facts establish Denson has not shown a lack of probable cause for his arrest.  Therefore, Denson fails to establish both a federal false arrest claim and a federal false imprisonment claim.

**(3)  Qualified Immunity**

Alternatively, Deputy Kinney argues he is entitled to qualified immunity because there was at least arguable probable

cause to arrest Denson and, even without arguable probable cause, there is no showing that Deputy Kinney violated a clearly established law under the circumstances of the traffic stop and subsequent arrest.   (Doc. #116, p. 22.)   The Court agrees with Deputy Kinney as to these issues.

"Arguable probable cause" exists when "reasonable officers in the same circumstances and possessing the same knowledge as the arresting officer could have thought there was probable cause to arrest" the plaintiff.   Sosa v. Martin Cnty., 13 F.4th 1254, 1264 (11th Cir. 2021). See also Garcia, 75 F.4th at 1185 (quoting Wesby, 138 S. Ct. at 593)(to determine "arguable probable cause" we must ask whether "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests."). Whether an officer possessed arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." Brown, 608 F.3d at 735 (citation omitted). Even if the arrest was not supported by actual probable cause, the Court finds that the summary judgment facts establish at least arguable probable cause to arrest Denson. Therefore, Deputy Kinney is entitled to qualified immunity.

Additionally, Deputy Kinney is entitled to qualified immunity because Denson has not established that the federal right was clearly established in the context of the current fact situation. Charles v. Johnson, 18 F.4th 686, 698 (11th Cir. 2021). Denson has

failed to satisfy any of the three ways of establishing a right was "clearly established." Baxter, 54, F.4th at 1267-68. Therefore, the summary judgment facts also show that Denson has not proven the constitutional right was clearly established at the time of the incident.

### C. Count II – Fourth Amendment Illegal Search and Seizure Against All Defendants In Their Individual Capacities Pursuant to 42 U.S.C. § 1983

Count II of the TAC asserts a federal claim pursuant to 42 U.S.C. § 1983 against all Defendant deputies for an illegal search and seizure. (Doc. #72, ¶¶ 107-12.)  Plaintiff alleges that the Defendants violated his Fourth Amendment rights when they "subjected Plaintiff and his property to unreasonable searches and seizures without a valid warrant, [without consent], and without reasonable suspicion or probable cause [to] do so." (Id., ¶¶ 107, 109.)

Defendants respond that the search and seizure of Denson's person was constitutional because they were incidental to a lawful arrest. (Doc. #116, pp. 22-23.) Defendants further argue that the search of Denson's vehicle was proper because CCSO policy requires an inventory search where a driver of a vehicle, like Denson, is the sole person in the vehicle at the time of the traffic stop and is placed under arrest, thus leaving the vehicle unattended or possibly obstructing traffic. (Id., pp. 23-24.)

**(1)   Search and Seizure Principles**

The Fourth Amendment assures "the right of persons to be secure in their persons, houses, papers, and effects from unreasonable searches and seizures." U.S. Const. amend. IV. Generally, the Fourth Amendment requires officers to secure a warrant before conducting a search. South Dakota v. Opperman, 428 U.S. 364, 369-76, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). However, "when an arrest is made, it is reasonable for the arresting officer to [conduct a warrantless] search [of] the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or to effect his escape." Chimel v. California, 395 U.S. 752, 763 (1969)). See also United States v. Robinson, 414 U.S. 218, 235 (1973) ("[W]e hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.").

Likewise, an inventory search of a vehicle is a well-established exception to the Fourth Amendment warrant requirement. United States v. Joseph, 611 F. App'x 946, 948 (11th Cir. 2015)(citing Colorado v. Bertine, 479 U.S. 367, 371 (1987)). To establish that the inventory search exception applies, Defendants must demonstrate that the police had the authority to impound the vehicle and must comply with the policies governing the search.

United States v. Williams, 936 F.2d 1243, 1248 (11th Cir. 1981).
"The Supreme Court has indicated that inventory searches are only
justifiable if performed pursuant to explicit and comprehensive
procedures. Without such procedures, officers are left with no
guidance in the performance of a duty which is meant not as an
investigatory technique but as a means for safeguarding
individuals' possessions and protecting the police from false
claims." Id. (citing Bertine, 479 U.S. at 372.) Thus, once a
vehicle is lawfully impounded, police may conduct a warrantless
inventory search of the car if they continue to follow standardized
criteria. Sammons v. Taylor, 967 F2d. 1533, 1543 (11th Cir. 1992).

    **(2)  Search of Plaintiff's Person**

    Denson argues that the search of his person was
unconstitutional because there was no reasonable suspicion or
probable cause to arrest him. (Doc. #131, p. 25.) As the Court
has previously found, the summary judgment facts established
probable cause to arrest Denson. The search of Denson's person
incident to his lawful arrest did not violate his constitutional
rights under the Fourth Amendment. United States v. Lyons, 403
F.3d 1248, 1253 (11th Cir. 2005) ("Under the Fourth and Fourteenth
Amendments, an arresting officer may, without a warrant, search a
person validly arrested."); Brooks, 78 F.4th at 1282. The
Defendants are therefore entitled to summary judgment as to

Plaintiff's claim that they conducted an unlawful search of his person.

### (3)  Inventory Search of Plaintiff's Vehicle

Denson argues that the inventory search of his vehicle was unconstitutional because Deputy Kinney lacked the authority to impound the car and the Defendants failed to follow CCSO policy governing inventory searches. (Doc. #131, pp. 26-27.) The Court does not agree.

The CCSO Operations Manual 1.27.1 provides that the CCSO deputies shall impound a vehicle if the: "[o]wner is arrested and has no means to remove the vehicle if located on public property or private property without consent of the property owner." (CCSO 1.27.1A; Doc. #131-9, p. 1.) Denson argues that Deputy Kinney had no authority to impound the vehicle because Plaintiff's wife, Tiffany Denson (Mrs. Denson), was the owner of the vehicle, was present at the scene of the traffic stop, and was not under arrest. (Doc. #131, p. 26.) But Mrs. Denson stated in her sworn statement that she did not arrive to the scene of the traffic stop until *after* Denson had been removed from the scene (as far as she knew). (Doc. #135, p. 2.)  Along the same line, Deputy Kinney said he was waiting for the tow truck to pick up the vehicle when Mrs. Denson arrived. (Doc. #116-3, p. 12.) Rather than towing the vehicle away as planned, it was turned over to Mrs. Denson. (Doc. #116-8, p. 5.)

Drawing all reasonable inferences in favor of Denson, the undisputed summary judgment facts establish that at the time Deputy Kinney decided to impound the vehicle (and enlisted the assistance of a tow truck), Denson had been arrested and Mrs. Denson was not present at the scene to take lawful possession of the vehicle (which was in the middle of the street). (Doc. #135, p. 2.)  Thus, Deputy Kinney had authority to impound and search Denson's vehicle pursuant to CCSO Rule 1.27.1A.

Denson also argues that the search of the vehicle was unlawful because it was not conducted in the presence of another deputy or reliable witness, and because no list of personal property found in the vehicle was submitted in accordance with CCSO policy. (Doc. #131, pp. 26-27.) Specifically, Denson asserts that the video evidence shows deputies Kinney, Booth, and Mercado each searched his vehicle without the presence of another deputy.  Denson further asserts that an inventory list of all the property taken from his vehicle was created only to later be destroyed and never submitted. (Id.)

The CCSO Operations Manual 1.27.4, which sets forth the procedures for vehicles impounded as evidence in a criminal case, mandates that an "[i]nventory search shall be conducted in the presence of another Deputy or reliable witness" and that "a list of all property shall be made and submitted to the Property and Evidence Section." (CCSO 1.27.4A, C; Doc. #131-9, p. 2.) Although

Denson asserts that the inventory search of his car was not conducted in the presence of another deputy, his assertion is contradicted by the video evidence. (Doc. #115, Ex. C.) Importantly, due to the angle of the video camera (and a somewhat obstructed view) the recorded video evidence does not clearly show whether Deputy Kinney even reached inside Denson's car to conduct a search.[7] (Id., 00:42-00:50.) The Court nevertheless must construe all ambiguities in the video footage in favor of Plaintiff, Baker v. City of Madison, 67 F.4th 1268, 1277 (11th Cir. 2023), and assumes for purposes of summary judgment that Deputy Kinney reached inside Denson's vehicle. See Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2021) (explaining that video evidence will not "obviously contradict" a plaintiff's version of events when it "fails to provide an unobstructed view of the events."). The video evidence does, however, demonstrate that Deputy Kinney was in the physical presence of seven other deputies, i.e., he was within feet of them and in plain view of the deputies who observed when he reached into the vehicle, which the Court finds satisfies CCSO policy for inventory searches.

---

[7] The video evidence appears to show Deputy Kinney either reaching down on the ground to grab a paper (or just inside Denson's vehicle), along with grabbing a piece of paper off the roof of vehicle. (Doc. #115, Ex. C.)

As to deputies Booth and Mercado, the video evidence also shows that they did not violate CCSO policy during the search. Mercado did not engage in the search of the vehicle; rather, it was deputies Booth, Flanagan, and Kirk.  The video shows the deputies conducted the search simultaneously and while in the physical presence of other deputies, and who were in feet of each deputy searching the vehicle. Deputy Mercado, who was training Deputy Kirk, stated he saw Kirk conduct the search and then counted Denson's money (in front of the camera) which totaled $450.00. (Doc. #115, Ex. C.; Doc. #116-6, p. 3.) Accordingly, deputies Kinney, Booth, Flanagan, and Kirk did not violate CCSO policy on this basis.

Finally, the Court does not find that Defendants violated CCSO policy when they destroyed the inventory list (tow sheet). Defendants concede that an inventory list was created in accordance with CCSO policy, listing the items found in Denson's vehicle, and that the list was later destroyed.  However, Deputy Booth explained that while he created the inventory tow sheet (Doc. #116-3, p. 22; Doc. #116-8, p. 5), it got destroyed because Denson's vehicle was picked up by a family member, i.e., Denson's wife, and was never towed.  (Doc. #116-8, p. 5.)  There is no mandate within the CCSO policy that requires an inventory list to be submitted to the "Property and Evidence Section" when the vehicle is not impounded.

Accordingly, the Defendants did not violate CCSO policy as to the search of Denson's vehicle.

In sum, Defendants did not engage in an unlawful search of Denson's person or vehicle in violation of his Fourth Amendment rights. Defendants are therefore entitled to summary judgment on Count II of the TAC.

### D. Count IX — Fourth and Fourteenth Amendment Excessive Force Claim Against Deputy Kinney In His Individual Capacity Pursuant to 42 U.S.C. § 1983

Count IX of the TAC alleges an excessive force claim under § 1983 against Deputy Kinney. (Doc. #72, p. 45.) Plaintiff alleges that Deputy Kinney violated his Fourth and Fourteenth Amendment rights and used excessive and unreasonable force when he

> violently struck Plaintiff in the shoulder, aggressively contorted and twisted Plaintiff's arm behind his back, forcefully pushed Plaintiff to another location with his arm behind his back and gratuitously and forcefully slammed Plaintiff's face and head into a motor vehicle, all causing Plaintiff to suffer substantial pain and injury to his person [and]
>
> . . . aggressively grabbed, twisted and contorted Plaintiff's other arm behind his back, using said arm as the focal point to violently push and maneuver Plaintiff to another location, causing Plaintiff to suffer substantial pain and injury to said arm [and]
>
> . . . applied handcuffs to Plaintiff's wrists while behind his back in an excessively tight fashion, causing Plaintiff to endure substantial pain and suffering.

(Doc. #72, ¶¶ 174-76.)

Defendants respond that Plaintiff's excessive force claim fails because a reasonable jury could not conclude that Deputy

Kinney's use of force was unreasonable under the Fourth Amendment because the force used was *de minimis*. (Doc. #131, pp. 26-32.) Even if the force was unlawful, Deputy Kinney asserts that he is entitled to qualified immunity. (Id., pp. 32-33.) Plaintiff responds that material factual disputes preclude summary judgment. (Doc. #131, pp. 28-34.)  The Court agrees with Plaintiff.

   **(1)  Excessive Force Principles**

   The Fourth Amendment's prohibition against unreasonable seizures encompasses the right to be free from the use of excessive force in the course of an arrest. Graham v. Connor, 490 U.S. 386, 395 (1989); Robinson, 46 F.4th at 1341 (citation omitted.) "Unlike a false arrest claim, a genuine excessive force claim is not resolved by the existence of probable cause.  Even when an officer has probable cause for an arrest, the manner in which a search or seizure is conducted must nonetheless comply with the Fourth Amendment." Richmond, 47 F.4th at 1180 (punctuation and citation omitted.)  As the Supreme Court has summarized:

> In assessing a claim of excessive force, courts ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them. A court (judge or jury) cannot apply this standard mechanically. Rather, the inquiry "requires careful attention to the facts and circumstances of each particular case. Those circumstances include the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff 's injury; any effort made by the officer to temper or to limit the amount of

force; the severity of the security problem at
issue; the threat reasonably perceived by the
officer; and whether the plaintiff was
actively resisting.

Lombardo v. City of St. Louis, Mo., 141 S. Ct. 2239 (2021)(internal

punctuation and citations omitted.)   See also Rivas-Villegas v.

Cortesluna, 595 U.S. 1, 6 (2021). While Lombardo dealt with a

Fourteenth Amendment excessive force claim, "the Fourteenth

Amendment's standard is analogous to the Fourth Amendment's."

Patel v. Lanier Cnty. Ga., 969 F.3d 1173, 1182 (11th Cir. 2020).

See also Piazza v. Jefferson Cnty., Ala., 923 F.3d 947, 953 (11th

Cir. 2019)("[T]he Fourteenth Amendment standard has come to

resemble the test that governs excessive-force claims brought by

arrestees under the Fourth Amendment.").

Excessive force claims in the context of a traffic stop and

arrest such as in this case are judged under the Fourth Amendment

objective reasonableness standard.   Baker, 67 F.4th at 1279. The

Court views the circumstances from the perspective "of a reasonable

officer on the scene, rather than with the 20/20 vision of

hindsight," and allows for the fact that officers are often

required to make "split-second judgments — in circumstances that

are tense, uncertain, and rapidly evolving — about the amount of

force that is necessary in a particular situation." Plumhoff v.

Rickard, 572 U.S. 765, 775 (2014) (quoting Graham, 490 U.S. at

396-97). See also Robinson, 46 F.4th at 1341; Charles, 18 F.4th at

699-700. "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." Cnty. of L.A., Calif. v. Mendez, 581 U.S. 420, 422 (2017).

The right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat of physical coercion to effect the arrest. Graham, 490 U.S. at 396. "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." Durruthy, 351 F.3d at 1094. See also Baxter, 54 F.4th at 1268; Wade v. Daniels, 36 F.4th 1318, 1323 (11th Cir. 2022); Charles, 18 F.4th at 699-700. Because of this, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). See also Brooks, 78 F.4th at 1277.

### (2)   Reasonableness of Force Used

Deputy Kinney asserts that his use of force was objectively reasonable because it was de minimis.  Drawing all reasonable inferences in favor of Plaintiff, the summary judgment facts and video evidence do not preclude a reasonable jury from finding excessive force.  A reasonable jury could find Denson was not resisting Deputy Kinney when Deputy Kinney reached inside the car to unlock Denson's door to place him under arrest.  Deputy Kinney

proceeded to place a handcuff on Denson's left wrist and "yank" Denson out of the vehicle.  According to Denson, Deputy Kinney struck him in the face.  When Deputy Kinney was "escorting" Denson out of the vehicle, Deputy Kinney took Denson's wrist and tried to "flip it over" before grabbing Denson by the throat and slamming Denson's back against the (hot) hood of Deputy Kinney's patrol vehicle.  Deputy Kinney applied pressure to Denson's left handcuffed wrist and his jaw to hold Denson in place while waiting for back-up police units to arrive.  Denson felt "blows" to his body while Deputies Tutt and Flanagan handcuffed him.  Denson's injuries consisted of a bruised chin, sore body, and shoulder and ankle pain due to aggravation of previous injuries, none of which required medical treatment.  Summary judgment is denied as to this count because there are material issues of fact to be resolved by a jury.

### (3) Qualified Immunity

Alternatively, Defendants argue that Deputy Kinney is entitled to qualified immunity.  Defendants assert that even if Deputy Kinney used excessive force, Denson has failed to show that the right was clearly established in the context of this case at the time of his arrest. (Doc. #116, p. 33.) Plaintiff responds that Deputy Kinney is not entitled to qualified immunity because *de minimis* principles do not apply here where the initial search and seizure are illegal and unconstitutional. (Doc. #131, p. 34.)

The Supreme Court has found law enforcement officers who used excessive force to be entitled to qualified immunity if the clearly established right had not been defined with specificity. "This Court has repeatedly told courts ... not to define clearly established law at a high level of generality. That is particularly important in excessive force cases, . . . ." _City of Escondido, Cal. v. Emmons_, 139 S. Ct. 500, 503 (2019)(citation omitted). _See also_ _City of Tahlequah, Okla. v. Bond_, 595 U.S. 9, 12 (2021); _Rivas-Villegas v. Cortesluna_, 595 U.S. at 6 (2021)("Thus, to show a violation of clearly established law, Cortesluna must identify a case that put Rivas-Villegas on notice that his specific conduct was unlawful."); _Kisela v. Hughes_, 138 S. Ct. 1148 (2018).

Viewing the facts in a light most favorable to Plaintiff, Plaintiff has satisfied his burden of establishing that under the circumstances of this case his right to be free of excessive force was clearly established as of July 2017. The motion for summary judgment as Count IX is denied.

### E. Count I — First Amendment Retaliation Against Deputy Kinney In His Individual Capacity Pursuant to 42 U.S.C. § 1983

Count I of the TAC alleges pursuant to § 1983 that Deputy Kinney retaliated against Plaintiff for exercising his First Amendment right to espouse his opinion concerning the past misconduct of the CCSO and its employees, including deputies

Kinney, Flanagan, Mercado, Booth, Tutt, Kirk, Amorosi, and Amengual, by subjecting Plaintiff to illegal searches and seizures, assaults and batteries, unlawful arrest and imprisonment, and malicious prosecution. (Doc. #72, ¶¶ 99-100.) Defendants argue that Deputy Kinney is entitled to summary judgment because Plaintiff has failed to provide any evidence showing that his arrest or any use of force was related to any alleged protected speech.  (Doc. #116, p. 36.)

    **(1)  First Amendment Retaliation Principles**

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). A First Amendment retaliation claim requires that Plaintiff establish that (1) he engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech; and (3) there was a causal connection between the retaliatory actions and the adverse effect on speech. Zen Group, Inc. v. Agency for Health Care Admin., 22-10319, 2023 WL 5942500, * 5, ___F.4th ___, (11th Cir. Sept. 13, 2023) (citing Demartini, 942 F.3d at 1289).

When a plaintiff alleges that retaliatory conduct is an arrest or seizure, plaintiff must plead and prove the absence of probable cause in order to establish the causation link. See Nieves, 139 S.

Ct. at 1726 ("[W]ith § 1983 First Amendment retaliation claims arising in the criminal prosecution and arrest context, the presence of probable cause will *generally* defeat a § 1983 First Amendment retaliation claim based on a civil lawsuit as a matter of law."); Reichle v. Howards, 566 U.S. 658, 664-65 (2012)("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause . . . ."). See also Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002). As the Eleventh Circuit summarized:

> To recap, the presence of probable cause will (1) defeat a § 1983 First Amendment retaliation claim for an underlying retaliatory criminal prosecution, Hartman, and also (2) will generally defeat a § 1983 First Amendment retaliation claim for an underlying retaliatory arrest, Nieves, except (a) when the "unique" five factual circumstances in Lozman exist together, or (b) where the plaintiff establishes retaliation animus and presents "objective evidence" that he was arrested for certain conduct when otherwise similarly situated individuals (committing the same conduct) had not engaged in the same sort of protected speech and had not been arrested, Nieves.

DeMartini, 942 F.3d 1277 at 1297.

### (2) Application of Principles

#### (a) Protected Speech

"In determining whether the government has violated free speech rights, the initial inquiry is whether the speech or conduct affected by the government action comes within the ambit of the

First Amendment." One World One Fam. Now v. City of Miami Beach, 175 F.3d 1282, 1285 (11th Cir. 1999). It is clear that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." City of Hous., Tex. v. Hill, 482 U.S. 451, 461 (1987). While this is not without limits, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Hill, 482 U.S. at 462–63.

Deputy Kinney does not argue that Denson's words exceeded the bounds of First Amendment protection, and the Court finds that they do not. Rather, Deputy Kinney argues that there is no evidence showing that he was subjectively motivated to arrest or utilize force against Denson because of Denson's alleged protected speech. (Doc. #116, p. 36.)

### (b)   Probable Cause

As discussed above, the summary judgment facts show there was actual probable cause for Denson's arrest and detention based upon his obstruction and traffic violations. The existence of probable cause to arrest, detain, and prosecute defeats Plaintiff's First Amendment retaliation claim. See Nieves, 139 S. Ct. at 1726. Denson neither alleges nor establishes any exception to the general rule that the existence of probable cause defeats his First

Amendment retaliation claim.  Deputy Kinney is therefore entitled to summary judgment as to Count I of the TAC.

### (c)   Qualified Immunity

Alternatively, the Court considers whether Deputy Kinney is entitled to qualified immunity as to the First Amendment retaliation claim.  An officer who has arguable probable cause to arrest is entitled to qualified immunity from a First Amendment retaliation claim.  Redd v. City of Enter., 140 F.3d 1378, 1383 (11th Cir. 1998).  As the Court has found, Deputy Kinney had actual and arguable probable cause to arrest Denson.  Therefore, Deputy Kinney is entitled to qualified immunity on the First Amendment retaliation claim.

In sum, while Denson's speech was protected by the First Amendment, Deputy Kinney had probable cause to arrest him, and that probable cause defeats the First Amendment retaliation claim. Alternatively, Deputy Kinney is entitled to qualified immunity as to this claim because he had arguable probable cause to arrest. Defendants' motion is therefore granted as to Count I of the TAC.

### VI.

Defendants assert that Deputy Kinney is entitled to summary judgment as to each of the state law claims, both on the merits and pursuant to the Florida official immunity statute.  The Court first discusses the Florida official immunity statute, then addresses the individual state law claims. (Doc. #116, pp. 34-39.)

## A.  Florida's Official Immunity Statute

Florida's official immunity statute provides in pertinent part:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
>
> . . .
>
> The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or  with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). This official immunity statute is a species of sovereign immunity that shields officers from tort liability unless one of the three exceptions is established. Perex v. Mulvey, 915 F.3d 1276, 1291 (11th Cir. 2019).

Under this statute, a deputy sheriff is personally liable only if he: (1) acted outside the scope of his employment or function; or (2) was within the scope of his employment or function and acted (a) "in bad faith," or (b) "with malicious purpose," or (c) "in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).  While these terms are not defined in the statute, "bad faith" has been

equated with the actual malice standard; "malicious purpose" has been interpreted to mean the conduct was committed with ill will, hatred, spite, or an evil intent, or the subjective intent to do wrong; and "wanton and willful disregard of human rights or safety," has been held to mean conduct that is worse than gross negligence, and requires proof that an officer knew, or reasonably should have known, that the conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences. Butler v. Gualtieri, 41 F.4th 1329, 1337 (11th Cir. 2022).

### B. Count III and Count IV — False Arrest and False Imprisonment Under Florida Law Against Deputy Kinney In His Individual Capacity

Count III and Count IV of the TAC assert claims for false arrest (Count III) and false imprisonment (Count IV) in violation of Florida law against Deputy Kinney in his individual capacity. (Doc. #72, ¶¶ 113-23, 124-34.)  Both claims assert that Deputy Kinney was acting within the scope of his employment with the CCSO and under color of state law. (Doc. #72, ¶¶ 2, 113, 124.)  Deputy Kinney is alleged to have intentionally caused Denson to be "unlawfully restrained without legal authority and against his will by twisting his arms behind his back, handcuffing him and confining him to a jail cell." (Id., ¶¶ 114, 125.)  This action was neither consented to nor otherwise privileged. (Id., ¶¶ 117-18, 128-29.)  Deputy Kinney's conduct subjected Denson to "false

arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause" (Id., ¶¶ 115, 126), causing various damages to Denson.  (Id., ¶ 122, 133.)  Denson further alleges that Deputy Kinney acted "in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiff's rights[.]" (Id., ¶¶ 120, 131.)

### (1)  False Arrest and False Imprisonment Principles

"False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment." Mathis v. Coats, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010). See also City of Boca Raton v. Basso, 242 So. 3d 1141, 1143 (Fla. 4th DCA 2018).  "The essential elements of a cause of action for false imprisonment include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or "color of authority"; and (4) which is unreasonable and unwarranted under the circumstances." Mathis, 24 So. 3d at 1289.  Similarly, the tort of false arrest requires proof of "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." Florez v. Broward Sheriff's Off., 270 So. 3d 417, 421 (Fla. 4th DCA 2019). The Eleventh Circuit has stated that false arrest and false imprisonment in Florida are

"different labels for the same cause of action." Coleman v. Hillsborough Cnty., 41 F.4th 1319, 1326 (11th Cir. 2022) (quoting Rankin v. Evans, 133 F.3d 1425, 1431 n.5 (11th Cir. 1998)). Under Florida law, the existence of probable cause to arrest is an affirmative defense which is a complete bar to claims of false arrest and false imprisonment. Lewis v. Morgan, 79 So. 3d 926, 928 (Fla. 1st DCA 2012)(false arrest); Baxter, 54 F. 4th at 1271 (false imprisonment); Mas v. Metro. Dade Cnty., 775 So.2d 1010, 1011 (Fla. 3rd DCA 2001)(both false arrest and false imprisonment).

Defendants do not dispute Denson was "seized," i.e., arrested and placed in jail, thus satisfying the "arrest" and "imprisonment" elements of the causes of action. Baxter, 54 F. 4th at 1271. Defendants argue, however, that the claims fail because Deputy Kinney had probable cause to seize, arrest, and file the charge against Plaintiff. (Doc. #116, p. 16.)  Denson responds there is a dispute of material fact as to whether Deputy Kinney had probable cause to arrest him.  (Doc. #131, p. 24.)

### (2)   Application of Principles

As discussed above, the summary judgment facts demonstrate that Deputy Kinney had probable cause to arrest, detain and jail Denson for obstruction and traffic infractions.  Deputy Kinney has therefore established the affirmative defense that probable cause existed for the arrest and imprisonment.  Deputy Kinney is entitled to summary judgment on Count III and Count IV of the TAC.

### (3)   Immunity Under Fla. Stat. § 768.28

Alternatively, the Court addresses whether Deputy Kinney has immunity under a Florida statute as to the claims of false arrest and false imprisonment. There is no dispute that Deputy Kinney was acting in the course and scope of his employment. (Doc. #72, ¶¶ 120, 131.)  Therefore, the only remaining issue is whether Deputy Kinney acted in bad-faith, or in a wanton and willful manner, or in a manner exhibiting wanton and willful disregard of human rights.  Denson argues that Deputy Kinney acted with malice by unlawfully stopping him without reasonable suspicion, arresting him without probable cause, and made false representations and statements about him in an incident report. (Doc. #131, pp. 37-38.)

As the Court has found, this argument is not supported by the summary judgment facts.  The summary judgment facts do not reveal any issue of material fact from which a reasonable jury could infer Deputy Kinney acted in bad faith, or with malicious purpose, or with wanton and willful disregard for human rights by stopping Denson's vehicle for a seatbelt violation, arresting him, or filing an incident report.  Accordingly, Deputy Kinney is shielded from personal liability, and is entitled to summary judgment on Counts III and IV of the TAC.

**C. Count VII and Count VIII – Assault and Battery Under
Florida Law Against Deputy Kinney In His Individual
Capacity**

Count VII and Count VIII allege claims for assault and battery
under Florida law against Deputy Kinney in his individual capacity.
(Doc. #72, ¶¶ 147-70.) Denson alleges that Deputy Kinney, while
acting within the course and scope of his duties as a CCSO deputy
(Id., ¶¶ 155, 167), "caused him to fear for his physical well-
being and safety and placed him in apprehension of immediate
harmful or offensive physical contact." (Id., ¶¶ 148, 160.) Denson
further alleges that Deputy Kinney subjected him "to immediate
harmful or offensive physical contact and battered him without his
consent or legal justification" (Id., ¶¶ 149, 161) when Deputy
Kinney "aggressively grabbed, twisted and contorted Plaintiff's
arm behind his back, using said arm [to] violently push and
maneuver Plaintiff to another location", "applied handcuffs to
Plaintiff's wrists while behind his back in an excessively tight
fashion", and "struck [him] all about his head and body." (Id., ¶¶
150-52, 162-64.)  This is alleged to have caused Denson substantial
pain and suffering.  (Id., ¶¶ 151, 163.)

Defendants assert that summary judgment in Deputy Kinney's
favor is warranted because the undisputed facts show that he used
a minimal amount of force to get Denson out of the vehicle, get
him restrained, and in custody. Defendants also argue that no
reasonable jury could conclude that Deputy Kinney's actions fall

within the definition of willful and wanton, or that such actions were malicious or taken in bad faith. (Doc. #116, p. 35.)

### (1)  Assault and Battery Principles

Under Florida law, assault and battery are two distinct torts. An "assault" is an "intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." Lay v. Kremer, 411 So.2d 1347, 1349 (Fla. 1st DCA 1990). Florida law concerning battery by a law enforcement officer in the context of an arrest was recently summarized by the Eleventh Circuit:

> In Florida, battery has two elements: (1) "inten[t] to cause a harmful or offensive contact," and (2) a resulting "offensive contact with the person of the other." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). In the arrest context, "[a] battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." Id. "If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." Id. But, "ordinary incidents of [an] arrest ... do not give rise to an independent tort." Lester v. City of Tavares, 603 So. 2d 18, 19–20 (Fla. 5th DCA 1992).

Baxter, 54 F.4th at 1272–73 ("Deputy Lee used brief and restrained force—grabbing Baxter, forcing him to the ground, and pulling his arm up—necessary to subdue a resisting suspect. His use of force

during the arrest was entirely ordinary and does not give rise to a battery claim under Florida law.").  See also Johnson v. City of Miami Beach, 18 F.4th 1267, 1275 (11th Cir. 2021).

>     **(2)   Application of Principles**

As the Court has previously found, while the summary judgment facts establish that Deputy Kinney had probable cause to arrest Denson, there are disputed issues of material facts whether Deputy Kinney used excessive force during the arrest.  These facts also create a jury issue as to whether there was an assault or battery committed by Deputy Kinney.  Accordingly, Deputy Kinney is not entitled to summary judgment as to Counts VII and VIII of the TAC.

>   **D. Count X — Malicious Prosecution Under Florida Law Against Deputy Kinney In His Individual Capacity**

Count X of the TAC alleges a claim for malicious prosecution in violation of Florida law against Deputy Kinney in his individual capacity. (Doc. #72, ¶¶ 178-90.)  More specifically, Denson alleges that Deputy Kinney "acted in bad faith, with malicious purpose in a manner exhibiting wanton and willful disregard for Plaintiff's rights" when he caused "spurious information or evidence to be forwarded to prosecutors, caused false police reports or fabricated statements to be filed that wrongly charged Plaintiff with the crimes of Battery on a Law Enforcement Officer, Resisting or Obstructing an Officer Without Violence, Driving While License Suspended or Revoked, and Threatening a Law Enforcement Officer

With Death or Serious Bodily Harm. (Id., ¶¶ 180, 186.) The criminal charges against Plaintiff terminated in Denson's favor when the State Attorney's Office declined to file an information on the Threatening a Law Enforcement Officer with Death or Serious Bodily Harm Charge and filed Notices of Nolle Prosequi for the other charges. (Id., ¶¶ 73-75, 181.) Denson alleges that there was an absence of probable cause for the judicial proceedings because he did not commit any of the crimes or offenses alleged and there was no credible evidence to show otherwise. (Id., ¶ 182.) Denson further alleges that Deputy Kinney lacked probable cause to believe that he was guilty or that the prosecutions would succeed, and that the absence of probable cause demonstrates that Deputy Kinney acted with malice. (Id., ¶¶ 183—84.)

Defendants assert that they are entitled to judgment as a matter of law because the summary judgment facts establish the existence of probable cause to arrest and prosecute Denson. (Doc. #116, pp. 36-38.) Defendants also assert that Denson's malicious prosecution claim as it relates to the charge of Threat with Death or Serious Bodily Harm fails as a matter of law because the State's Attorney's Office declined to file an information, thus there was no commencement of prosecution against Denson. (Id., p. 38.)

**(1)  Malicious Prosecution Principles**

In Florida, a state law claim for malicious prosecution requires proof of six elements:

> In order to prevail in a malicious prosecution
> action, a plaintiff must establish that: (1)
> an original criminal or civil judicial
> proceeding against the present plaintiff was
> commenced or continued; (2) the present
> defendant was the legal cause of the original
> proceeding against the present plaintiff as
> the defendant in the original proceeding; (3)
> the termination of the original proceeding
> constituted a bona fide termination of that
> proceeding in favor of the present plaintiff;
> (4) there was an absence of probable cause for
> the original proceeding; (5) there was malice
> on the part of the present defendant; and (6)
> the plaintiff suffered damage as a result of
> the original proceeding. The failure of a
> plaintiff to establish any one of these six
> elements is fatal to a claim of malicious
> prosecution.

Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994)(citations omitted.)  See also Debrincat v. Fischer, 217 So. 3d 68, 70 (Fla. 2017).  Proof of actual malice is not necessary, since proof of legal malice (i.e., an intentional act performed without justification or excuse) is sufficient.  Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007).  Proof of the lack of probable cause, however, is necessary.  "The absence of probable cause is a necessary element of common law malicious prosecution."  Paez, 915 F.3d at 1292 (citing Miami-Dade Cnty. v. Asad, 78 So.3d 660, 664 (Fla. 3d DCA 2012)).  See also Alvarez-Mena v. Miami-Dade Cnty., 305 So. 3d 63, 68 (Fla. 3d DCA 2019).

### (2)  Application of Principles

As the Court has found, the summary judgment facts establish there was probable cause to arrest, detain and prosecute Plaintiff

for obstruction and traffic infraction violations.   The existence of this probable cause defeats the Florida malicious prosecution claim.

Alternatively, the Court finds that Deputy Kinney is entitled to immunity pursuant to Fla. Stat. § 768.28.  The summary judgment facts establish that Deputy Kinney did not act outside the scope or function of his employment, and did not act in bad faith, or with malicious purpose, or in a manner exhibiting wanton or willful disregard for human rights, safety, or property.

Finally, the undisputed summary judgment facts demonstrate that the State's Attorney's Office declined to file an information as to the charge of Threat With Death or Serious Bodily Injury against Denson. Since a criminal prosecution can only commence upon a filing of information or indictment, any claim for malicious prosecution as to this charge fails as a matter of law. See Mancusi, 632 So. 2d at 1355. See also Erp v. Carroll, 438 So. 2d 31, 40 (Fla. 5th DCA 1983) (in Florida, "[c]riminal prosecutions are commenced with the filing of an information or indictment"). Accordingly, Defendants' motion for summary judgment on Count X is granted.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #131) is **GRANTED IN PART AND DENIED IN PART.**

2. Judgment will be entered in due course in favor of defendants Alan Flanagan, David Mercado, Jason Booth, Ryan Tutt, Nathan Kirk, Joseph Amorosi, and Bartolome Amengual as to all counts of the Third Amended Complaint related to them.  The motion is denied as to Deputy Kinney as to Counts VII, VIII, and IX, and is granted as to all other counts relating to Deputy Kinney.

**DONE AND ORDERED** at Fort Myers, Florida, this __26th__ day of September, 2023.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Parties of record